SOUTHERN RY. CO. *v.* SANDERS *et al.*

(*Nashville,* December Term, 1951.)

Opinion filed February 9, 1952.

410

Ewing, Laughlin & Watson, of Memphis, for complainant.

Hughie Ragan and H. Carmack Murchison, both of Jackson, for Sarah Sanders.

Milton P. Rice, Assistant Attorney General, for Roy H. Beeler, Attorney General.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents an attack on Chapter 70, of the Public Acts of 1949, which undertakes to legitimate natural children whose parents marry after their birth.

In the course of his employment by the Southern Railway, Booker T. Sanders, husband of Defendant Ann T. Sanders, was killed. His widow and children sought compensation under the Federal Employers' Liability Act, 45 U. S. C. A. Section 51 et seq., in the Federal Court at Memphis. Some of the children of Booker T. and Sarah Ann Sanders, who were born prior to their marriage, asserted legitimacy under the provisions of Chapter 70, Public Acts of 1949, and the Railway thereupon challenged the constitutionality of the Act. The Federal Judge stayed the compensation proceeding in his Court until the State Courts might pass upon the constitutionality of the State Act.

The Southern Railway next filed the present bill for a declaratory judgment in the Chancery Court of Fayette County, asserting the unconstitutionality of the Act. The Defendants answered, and on the bill and answer, the Chancellor upheld the validity of the Act. The Railway

has appealed, and in support of its appeal, insists that the Act violates Sections 4, 6, 8 and 14 of Article XI of the Constitution of Tennessee.

The principal provision of Chapter 70, Public Acts of 1949, which was passed as an amendment to Code Section 9567, is as follows: "All illegitimate children whose parents have heretofore intermarried or who shall hereafter intermarry shall thereby become legitimatized and shall become legitimate for all purposes and entitled to all the rights and privileges of legitimate children, without the necessity of any proceedings under this and preceding Sections of the Code \* \* \*."

The Act then provides that the natural children shall be legitimated though the marriage be illegal or void, but expressly declares that nothing in the Act shall be construed "as the legalization of illegal, void or voidable marriages."

█ The Act was passed solely for the purpose of fixing the status of natural children under certain circumstances, and the marital status of the parents is expressly declared to be outside the purpose and purview of the Act. Therefore, since the Act expressly disclaims any purpose to affect the marital status of the parents, it is not unconstitutional under Section 4 of Article XI, which forbids the Legislature to grant divorces except by general law; nor under Section 14 of Article XI, which has to do with inter-racial marriages.

It remains to consider whether the Act is unconstitutional, as the Appellant insists it is, under Section 6, and Section 8, of Article XI.

Section 6 of Article XI is as follows: "The legislature shall have no power to change the names of persons, or to pass acts adopting or legitimatizing persons, but shall, by general laws, confer this power on the Courts."

██ Considering the context of this section, as it appears in Article XI, and the fact that the subject of legitimatizing persons is coupled with the subject of changing names and passing Acts of adoption, under the rule of noscitur a sociis, the word "persons" means "individuals" and forbids the Legislature, by special Act, to decree the adoption of named or particular persons, or to change the name or legitimate particular or named individuals.

A consideration of contemporaneous law at the time of the passage of the Constitution of 1870, makes it clear that the abolition of special legislation for chartering particular corporations, divorcing named persons, and decreeing the adoption and legitimation of named children, was a matter of special concern to the framers of the Constitution of 1870.

From 1796 to 1834, following the example of the British Parliament, the Tennessee Legislature had passed many special Acts for the benefit of particular individuals, and in effect, for the decision of lawsuits between individuals. The abuses attendant upon this special legislation and lack of uniformity, were manifest by the time of the adoption of the Constitution of 1834, so when the second Constitutional Convention assembled, and that Constitution was adopted, Section 7 of Article XI (which is now the first paragraph of Section 8 of Article XI), was passed to prohibit the passage of legislation for the benefit of particular individuals.

Despite Section 7 of Article XI of the Constitution of 1834, this Court in 1852, in the case of *Swanson* v. *Swanson*, 32 Tenn. 446, approved a special Act by which certain children of Swanson had been legitimated, though the Court expressed some doubt of legislative authority to pass the special Act by which the legitimation had been

accomplished. The opinion, which apparently escaped counsel's attention in the present case, is interesting because some of Swanson's children had been legitimated by the Court at Memphis, and the others had been legitimated by the special Act of the Legislature.

In the course of the opinion, which was by Justice McKinney, it was said:

"*The competency of the Legislature, by general laws, to provide for the legitimation of bastards is not questioned*; nor could the power of the Legislature to pass private laws, legitimating particular individuals, have admitted of any question prior to the prohibition against special legislation, introduced into the amended Constitution of this state in 1834, art. 11, sec. 7.

"The legitimation of persons born out of lawful wedlock is to be regarded, then, not only as a settled, but likewise as rather a favored, policy, in the legislation of this and other states of the Union. And, therefore, the courts, in the exposition of statutes conferring this right, whether they be general or private acts, are to give them at least a fair and reasonable, if not a liberal, construction." *Swanson* v. *Swanson,* 32 Tenn. 446, 454. (Our emphasis.)

The Court then exercising the liberal construction, in spite of Section 7 of Article XI of the Constitution of 1834, upheld the validity of the special Act by which the Swanson children were legitimated, and the law stood as settled by that opinion at the time of the Constitutional Convention in 1870, when to abrogate the rule in the Swanson case, and the construction of the Court, of Section 7 of Article XI of the Constitution of 1834, Section 6 of Article XI of the Constitution of 1870 was adopted.

From the language of the section in the light of contemporaneous state of the law, we cannot escape the conclusion that the prohibition of Section 6 of Article XI was against the passage of special Acts of legitimation for the benefit of named individuals, while giving the Legislature power to pass general laws of legitimation. Implicit in the exercise of this power is the definition of those who are, and those who are not, automatically to have the rights and status of legitimate children in Tennessee. To add to members of this class, is the only purpose or effect of Chapter 70, Public Acts of 1949.

Within constitutional limitations, the power of the Legislature to change the common law and make special definitions of the status of persons, is plenary. Obeying the constitutional mandate, the Legislature has provided for the legitimation of natural children by the Courts, giving concurrent jurisdiction to the Circuit, Chancery, and County Courts in Code Sections 9561 et seq. These sections of the Code are modifications of Acts passed in 1805 and 1851 and 1852. Chapter 70, Public Acts of 1949, does not affect the validity of these Code sections, and the only effect of the Act of 1949, is to add to the common law class of persons automatically legitimate, because born in wedlock, natural children whose parents marry after their birth, and who are publicly acknowledged by their parents as their offspring.

Chapter 70, Public Acts of 1949, is not a special, but a general law, state-wide in its application, and containing no arbitrary classification for the benefit of particular individuals, which would bring it within the prohibition of Section 8 of Article XI. It undertakes to confer benefits on all natural children in Tennessee whose parents marry after the birth of such children, and so meets the tests for a general law or ''laws of the land'', as those

tests have been laid down in the celebrated cases of *State v. Columbia, Godwin & Santa Fe Turnpike Co.,* 133 Tenn. 446, 181 S. W. 682; *Stratton Claimants v. Morris Claimants,* 89 Tenn. 497, 15 S. W. 87, 12 L. R. A. 70; *Pope v. Phifer,* 50 Tenn. 682; *Vanzant v. Waddell,* 10 Tenn. 260; *Jones' Heirs v. Perry,* 18 Tenn. 59.

That the Act of 1949 is not contrary to the public policy of Tennessee, has been determined by this Court in the case of *Smith v. Mitchell,* 185 Tenn. 57, 66-67, 202 S. W. (2d) 979, and that the legitimation of the children is effected though the marriage of the parents be void, is settled by Code Section 8453, as that section was construed in *Deihl v. Jones,* 170 Tenn. 217, 94 S. W. (2d) 47.

The assignments of error are overruled and the decree is affirmed at appellants' cost.