IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 18, 2005 Session

## BETTY PUCKETT, ET AL. v. REBECCA D. ROBERSON, ET AL.

**A Direct Appeal from the Circuit Court for Obion County**
**No. 3-264     The Honorable William B. Acree, Jr., Judge**

_____

### No. W2004-02994-COA-R3-CV - Filed June 30, 2005

_____

Parents of minor killed as passenger in a single-car accident brought wrongful death action against Defendants/Appellees, a husband and wife whose home decedent had visited, as an uninvited guest, in the hour preceding the accident. Trial court granted summary judgment for Defendants/Appellees. Parents/Appellants appeal, asserting that Defendants/Appellees owed a duty of care to decedent because they condoned the use of alcohol by minors in their home and thereby created a special relation with decedent. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Bruce Conley and Bruce Moss of Union City, Tennessee For Appellants, Betty Puckett and Terry Phelon

James A. Hamilton III of Dyersburg, Tennessee For Appellees Rebecca D. Roberson and Keith Roberson

### OPINION

In September 2002, Keith Roberson and his wife Rebecca D. Roberson (the "Robersons," "Defendants," or "Appellees") lived in a rural part of Obion County, Tennessee a few miles west of Union City. The Robersons have two daughters, Amie and Lacy. In September 2002, Amie was seventeen years old and attended Obion County Central High School in Troy, Tennessee.

During the afternoon of September 7, 2002, plans were made for three other teenage girls, Sheena Cates, Kara Barnes and Whitney Hollis, to spend the night at the Roberson home. The girls arrived at the Roberson home in the late afternoon of September 7, 2002. Keith Roberson worked

the night-shift and was not at home during the evening and early morning hours of September 7, 2002 and September 8, 2002.

At approximately 8:00 p.m., Rebecca Roberson took the three teenage girls, Lee Lunsford (a teenage boy who attended school with the overnight guests and had stopped by the Roberson home), and her daughter Lacy to Hubb's Restaurant in Hickman, Kentucky. After eating, the group returned to the Roberson home. By the time the group arrived back at the Roberson home, the Robersons' daughter Amie was there with her boyfriend Cory Busy. Soon thereafter, another teenager, Megan Jackson, came to the Roberson home. Megan Jackson had originally planned to spend the night at the Robersons but later changed her mind.

Sometime before 11:00 p.m., Kara Barnes, Whitney Hollis, Sheena Cates, and Megan Jackson told Rebecca Roberson that they wanted to drive into Union City. Mrs. Roberson instructed them to be back by 11:00 p.m. and the girls left the Roberson home in Sheena Cates' vehicle and drove into Union City.

While in Union City, the four girls saw and visited with other friends who had congregated in the McDonald's parking lot, which was a common gathering place for teenagers in the community. Among those that the girls talked with at McDonald's were Megan Woods and Christopher Phelon (age 17). The four girls then left Union City and arrived at the Roberson home just before 11:00 p.m.

Lee Lunsford, who had also accompanied the girls and Mrs. Roberson to Hubb's Restaurant, also left the Roberson home soon after returning from dinner. Lee Lunsford was by himself when he left the Robersons. He drove into Union City where he rode around to determine whether any other friends were out that night. Specifically, Lee Lunsford drove up and down Reelfoot Avenue, which was a routine practice for teenagers in Union City. While driving, Lee Lunsford saw Megan Woods on the parking lot of the Phillips 66 Station on Reelfoot Avenue. Megan Woods waved Lee Lunsford down and he stopped to visit with her.

In September, 2002, Megan Woods was a student at Obion County Central High School and also worked as a part-time employee at Flippen's Restaurant in Obion County. On the night of September 7, 2002, Megan Woods had gotten off work at approximately 9:30 p.m. After completing work, she drove home where she quickly changed clothes. She left her house at approximately 10:15 p.m. and drove to Jordan's Liquor Store, which is located in Kentucky a short distance across the Tennessee-Kentucky state line. At Jordan's, Megan Woods purchased a pint of Everclear, which is pure grain alcohol. After making her purchase, Megan Woods drove into Union City where she saw and waved down Lee Lunsford.

While on the parking lot of the Phillips 66, Megan Woods told Lee Lunsford that she had Everclear in her possession. Megan and Lee then went inside the Phillips 66 where they purchased Gatorade to mix with the Everclear and white plastic Phillips 66 cups in which to mix their drinks. In the parking lot of the Phillips 66, Megan Woods mixed a drink for herself and for Lee Lunsford. Megan and Lee then left the Phillips 66 in Lee's vehicle and drove around Union City together.

Eventually, Megan Woods and Lee Lunsford went to the Roberson home. Megan Woods had not been invited to the Roberson home on this particular night and, prior to September 7, 2002, she had only been to the Roberson home on one other occasion, which was approximately one year before September 2002.

Megan Woods had no intention of spending the night at the Roberson home and, in fact, had been instructed by her mother to come home. When Lee and Megan arrived at the Roberson home, Mrs. Roberson spoke with Megan briefly. While at the Roberson home, Megan Woods was still drinking from her Phillips 66 plastic cup. Megan Woods remained at the Roberson home for approximately fifteen or twenty minutes. While Megan Woods was at the Roberson home, Christopher Phelon arrived unexpectedly and without an invitation. Very shortly after his arrival, some of the others indicated that they were hungry. Christopher offered to go to the Krystal Restaurant in Union City to purchase food. Megan Woods decided to ride with him. While he was in her home, Mrs. Roberson said hello to Christopher Phelon but did not have a conversation with him.

Prior to coming to the Roberson home, around 7:00 p.m., Damon Shore, another student and a friend of Christopher's, ran into Christopher and Tyler Turner in Union City. The three boys then went to Jordan's Liquor Store and purchased a twelve pack of beer and rode around Union City until approximately 8:15 p.m. When Damon Shore saw Christopher later in Union City around 11:15 p.m., Christopher allegedly told Damon that he and Tyler had consumed one beer each and then sold the remaining beers to another high school student.

Christopher Phelon and Megan Woods left the Roberson home ostensibly for the purpose of going to Krystal's. When they left the Roberson home, Christopher Phelon was driving his 1994 Ford pick up truck and Megan was in the passenger seat. Although Christopher and Megan purported to return directly to the Roberson home after procuring the food, after going through the Krystal drive-through, Christopher and Megan went riding around. At some point after leaving the Roberson home, but before the accident, they apparently switched drivers and Megan Woods got behind the wheel of Christopher's truck. At approximately 12:30 a.m. on September 8, 2002, Megan Woods and Christopher Phelon were involved in a one-car accident. Christopher Phelon died as a result of the injuries he sustained in this accident. The accident occurred on a very sharp curve on State Route 184 or Old Troy Road in Obion County, Tennessee. The accident did not occur near the Roberson home and, in fact, Megan Woods and Christopher Phelon were traveling away from the Roberson home at the time of the accident. The "Investigators Summary" filed as an exhibit to the deposition of Brian Wright, the Tennessee State Trooper who worked this accident, indicates that Megan Woods was driving the vehicle at the time of the accident. The summary also states that "Megan L. Woods' Blood Alcohol Content was 144.4 mg/dl at 2:29 a.m. on 09-08-02, the time the blood was drawn."[1] Post-mortem blood tests indicate that Christopher Phelon's blood alcohol level was 0.03. On September 3, 2003, Betty Puckett and Terry Phelon, as the next of kin of Christopher Phelon and Betty Puckett as administrator ad litem of the estate of Christopher Phelon

---

[1] Levels greater than 100 mg/dl are considered Toxic Blood Alcohol levels.

(together, "Plaintiffs," or "Appellants") filed a wrongful death lawsuit against the Robersons. The Complaint reads, in relevant part, as follows:

### III. FACTS SUPPORTING CLAIM

4. Chris Phelon, age seventeen, was killed in a vehicle accident on September 8, 2002, while riding as a passenger in a vehicle driven by Megan Woods, also a minor, who was impaired following the consumption of alcohol at the home of the Defendants.

5. For several months and on many occasions prior to the accident of September 8, 2002, the Defendants, both adults, had encouraged high school students to come to the home of the Defendants for the purpose of consuming alcoholic beverages.

6. On the night of September 7, 2002, several students, including Chris Phelon and Megan Woods, met at the home of the Defendants and were permitted by the Defendant, Rebecca D. Roberson, to consume alcoholic beverages at the Defendants' home.

7. On the night of September 7, 2002, Chris Phelon and Megan Woods had visited at the home of the Defendants, consumed alcoholic beverages, temporarily left to obtain food for others who were at the home, and were returning when the accident occurred which caused the death of Chris Phelon.

### IV. ACTS OF NEGLIGENCE AND CAUSES OF ACCIDENT

8. On the date of September 7, 2002, and on numerous occasions prior to that date, the Defendants, Rebecca Roberson and Keith Roberson, had permitted and encouraged high school students, all under the age of eighteen, to come to the home of the Defendants where alcoholic beverages were being openly consumed by the students.

9. The Defendants knew on and before September 7, 2002, that the purchase and consumption of alcoholic beverages by minors was unlawful and in violation of the criminal law of the State of Tennessee.

10. The Defendants assisted the minors, including Megan Woods and Chris Phelon, in the violation of the following section of **Tennessee Code** which was in effect and applicable on September 7, 2002, to the conduct at the home of the Defendants:

**1-3-113. Eighteen-year-olds–Legal responsibility–Alcoholic beverage restrictions on persons under twenty-one.–**
(b) ...it is unlawful for any person under twenty-one (21) years of age to purchase, possess, transport or consume alcoholic beverages, wine, or beer...

11. The Defendants were guilty on September 7, 2002, of contributing to the delinquency of minors in violation of **Tennessee Code 37-1-156(a)**:

**37-1-156. Contributing to delinquency–Penalty–Jurisdiction of court.–** (a) Any adult who contributes to or encourages the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct or by participating as a principal with the child in an act of delinquency, unruly conduct or by aiding the child in concealing an act of delinquency or unruly conduct following its commission, commits a Class A misdemeanor.

12. The Defendants, Rebecca Roberson and Keith Roberson, aided and abetted the minors in the unlawful possession and consumption of alcoholic beverages, and it was this conduct on the part of the Defendants which encouraged the unlawful use of alcoholic beverages by the minors involved [in] the vehicle accident which caused the death of Chris Phelon.

13. The Defendants had a duty and obligation to properly supervise the minors who were at their home on the night of September 7, 2002, and the Defendants breached this obligation. It was the breach of this obligation that led to the circumstances which caused the death of Chris Phelon.

14. After Rebecca Roberson knew on the night of September 7, 2002, that the teenagers were consuming alcoholic beverages at the home of the Defendants, she negligently failed to properly supervise the minors who were visiting at her home, including Megan Woods and Chris Phelon.

15. The acts of negligence of the Defendants, as described above, and their omissions in failing to properly supervise the minors visiting at their home, set in motion the events which culminated in the death of Chris Phelon.

16. The minors came to the home of the Defendants in vehicles, and the Defendants knew that the minors were planning to drive after consuming alcoholic beverages. The Defendants were obligated to discourage the use of alcohol by the minors and to take all reasonable steps to prevent the minors from drinking and driving. The Defendants breached this duty which cause the minors, including Megan Woods, to become impaired.

On December 15, 2003, the Robersons filed their Answer, in which they denied the material allegations of the Complaint. In their Answer, the Robersons assert that the accident was caused by the negligence of Christopher Phelon or Megan Woods. The Roberson also rely upon the provisions of T.C.A. §57-10-101, which states that the proximate cause of injuries inflicted upon another by an intoxicated person is the consumption of alcoholic beverages or beer rather than the furnishing of same.

On September 22, 2004, the Robersons filed a Motion for Summary Judgment on the grounds that they did not owe a duty of care to the Plaintiffs or Plaintiffs' Decedent and that no special relation existed and that the accident was not due to any negligence on the part of the Defendants. The Motion for Summary Judgment was supported by a Statement of Material Facts and a Memorandum of Law. On November 14, 2004, the Plaintiffs filed a Response to the Motion for Summary Judgment along with a Statement of Material Facts and a Memorandum of Law in opposition to the Motion for Summary Judgment. The Motion for Summary Judgment was heard on November 19, 2004. On November 30, 2004, the trial court entered its "Order Granting Summary Judgment" (the "Final Order"), which reads, in pertinent part, as follows:

There is evidence in the record that a number of people were drinking while at the defendants' home, and that the defendant, Rebecca Roberson, knew or should have known that they were. There is also evidence that teenage drinking had been permitted at the defendants' home on prior occasions.

Before going to the defendants' home, Megan Woods purchased a pint of pure grain alcohol and had mixed a drink with Gator-Aid in a [plastic] cup. She carried the drink into the defendants' home. She does not remember whether this was her first drink or her second drink. However, there is some evidence that she mixed a drink while in the defendants' kitchen.

The evidence is disputed as to whether Megan Woods appeared to be intoxicated while at the defendants' home and as to whether Mrs. Roberson knew or should have known that Megan was drinking while she was there.

The night of September 7th was the first time Megan Woods had been inside the defendants' home. She was not expected and had not been invited to spend the night. However, after she arrived, Mrs. Roberson asked her if she was spending the night. Megan said she did not know as she had to call her mother. Megan's mother later told her to come home, but this was not communicated to Mrs. Roberson.

Mrs. Roberson testified that she had several rules. She did not allow smoking in her home, and there was not supposed to be any drinking. Curfew was at 11:00 p.m.. This meant that any overnight guest who was at her home at 11:00 p.m. was not permitted to leave.

Megan Woods was at the defendants' home for less than 30 minutes. She and Chris Phelon left to get something to eat. She agreed to bring the defendants' daughter a Coke freezy.

The accident occurred approximately one hour after they left.

The plaintiffs rely upon two separate theories of liability. They allege that a special relation existed between the defendants and Megan Woods and Chris Phelon. See <u>Biscan v. Brown</u>, (Court of Appeals No. M-2001-02776-SC-R11-CV, appeal pending before the Supreme Court). As stated in <u>Biscan</u>,

"One generally does not have a duty to control the conduct of another so as to prevent that person from injuring a third party...Despite this general rule, such a duty may arise when a special relation exists between the defendant and either (1) the person whose conduct threatens to cause harm or (2) the person exposed to harm...By recognizing this exception, Tennessee courts have adopted the restatement (second) of torts Section 315, which describes the exception as arising where a special relation imposes a duty to control the third person's conduct or gives another person a right of protection."

The Court finds that a special relation did not exist in this case. Megan Woods and Chris Phelon appeared at the defendants'

home unexpected and without an invitation. They were there only a short period of time and had no intentions of staying overnight. The Court finds that the defendants had no right nor duty to control their conduct.

The plaintiffs also contend that T.C.A. §37-1-156 (Contributing to delinquency–penalty–jurisdiction of court) creates a cause of action. They contend the defendants contributed to the delinquency of minor by allowing alcohol to be consumed at the defendants' home. The record before the Court does not reflect that the defendants engaged in any conduct which contributed to the delinquency of Chris Phelon or Megan Woods. Furthermore, the Court finds that violation of this statute under the facts of this case would not constitute a proximate or legal cause of the accident.

For the reasons herein above set forth, the motion for summary judgment is granted.

The Plaintiffs appeal from the Final Order and raise three issues for review as stated in their brief:

1. Whether the trial court erred in granting the Defendants' Motion for Summary Judgment?

2. Whether material issues of fact in dispute prevent summary judgment?

3. Whether the Defendants assumed a duty to give guidance and supervision to high school students who were drinking alcoholic beverages at the Defendants' home?

We first note that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material

-8-

fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

A negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See, e.g., Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. *Id.* at 869.

The issue being tested in this motion for summary judgment is whether the Robersons owed a duty to Christopher Phelon. "As a general rule, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others." *Nichols v. Atnip*, 844 S.W.655, 661 (Tenn. Ct. App. 1992). In order for a duty to arise, however, it must be shown that the injury is a "reasonably foreseeable probability and not just a remote possibility." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994) (citing *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992)). The evidence in this case indicates that Christopher Phelon was driving his vehicle at the time he and Megan Woods departed the Roberson home. It is uncontested that Mr. Roberson was not in his home the entire evening and early morning of September 7, 2002-September 8, 2002 because he was at work. Consequently, he cannot be charged with any knowledge or conduct that may have created a duty of care toward Christopher Phelon. As to Mrs. Roberson, we have reviewed the entire record and can find nothing to indicate that she knew or should have known that Christopher was intoxicated, or otherwise incapable of operating a vehicle, at the time he left her residence. Although the record indicates that Christopher had consumed some amount of alcohol earlier in the evening and also indicates that he may have procured a beer from Will Rice while at the Roberson home, nothing in the record indicates that Christopher solicited, procured, or drank alcohol in the presence of Mrs. Roberson. All of the testimony indicates that Christopher exhibited no signs of intoxication on the evening of September 7, 2002; and, in fact, the post-mortem blood tests performed bear witness to his sobriety that night. On the other hand, the evidence does indicate that Megan Woods was intoxicated on September 7, 2002; and there is sufficient evidence in the record to create at least a question of fact as to whether Mrs. Roberson knew, or should have known, that Megan was impaired. However, this fact alone does not automatically create a duty of care owed by the Robersons toward Christopher. In truth, the fact that Megan was intoxicated makes it all

the less foreseeable that a sober person, such as Christopher Phelon, would allow her to operate his vehicle.

Despite the fact that it was not reasonably foreseeable that sometime after departing the Roberson home, Christopher Phelon would have allowed an intoxicated Megan Woods to drive his vehicle, Tennessee Courts have, in limited circumstances, held that a duty may arise when a "special relation" exists. The duty which might arise under a "special relation" was discussed extensively by our Supreme Court in *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005), to wit:

> The general duty of care does not include an affirmative duty to act for the protection of another, however, "unless the defendant 'stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.' " *Turner*, 957 S.W.2d at 818 (citing *Bradshaw*, 854 S.W.2d at 871); *see also* Restatement (Second) of Torts § 315 (1965) (hereinafter "Restatement"). The special relationship doctrine carves out an exception to the general rule that there is no duty to act for the protection of a third party. *Bradshaw*, 854 S.W.2d at 871; *see also* Restatement § 315. In other words, the doctrine recognizes that "'certain socially recognized relations exist which constitute the basis for such legal duty.'" *Bradshaw*, 854 S.W.2d at 871 (quoting Fowler V. Harper & Posey M. Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 887 (1934)).

> We have recognized that because "the imposition of a legal duty reflects society's contemporary policies and social requirements," the concept of duty "'is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Bradshaw*, 854 S.W.2d at 870 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53 at 358 (5th ed.1984)). Thus, in determining whether a defendant has a relationship to the plaintiff such that she is entitled to protection, we will weigh public policy considerations, which "are crucial in determining whether a duty of care existed in a particular case." *Burroughs v. Magee*, 118 S.W.3d 323, 329 (Tenn.2003) (citing *Bain v. Wells*, 936 S.W.2d 618, 625 (Tenn.1997), and Bradshaw, 854 S.W.2d at 870).

> In deciding whether a duty was owed to act for the protection of a third party, we will also consider whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable. *Burroughs*, 118 S.W.3d at 329....

This emphasis on foreseeability in third-party cases dovetails with the balancing test we generally apply in considering whether a defendant owed a duty of care to a particular plaintiff. Specifically, we consider the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.
*McCall*, 913 S.W.2d at 153; *see also Burroughs*, 118 S.W.3d at 329; *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83 (Tenn.2000); *Coln*, 966 S.W.2d at 39; *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891 (Tenn.1996).

The balancing test attempts to align the imposition of a duty with "society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *Bradshaw*, 854 S.W.2d at 870 (citing William L. Prosser, Palsgraf Revisited, 52 Mich. L.Rev. 1, 15 (1953), and *Kirk v. Reese Hosp. & Med. Ctr.*, 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387, 396-97 (1987)). Although all the balancing considerations are important, the foreseeability prong is paramount because "[f]oreseeability is the test of negligence." *Doe*, 845 S.W.2d at 178. In sum, in cases such as this one where we must determine whether a defendant owed an affirmative duty to act for the protection of another, we will consider whether public policy and foreseeability favor recognizing a special relationship, and we will also consider whether the remaining factors in the balancing test favor imposition of a legal duty.

*Id.* At 478-80 (footnotes omitted).

Both of the parties to this appeal rely upon *Biscan* for their respective positions on the question of whether Christopher Phelon was owed a duty of care by the Robersons. In *Biscan*, a father chose to host a party in his home to celebrate his daughter's eighteenth birthday. The majority of those who attended the party were students who attended school with the host's daughter. No written invitations were given; rather, the host's daughter personally extended invitations. The father did not serve alcohol, or make alcohol available at the party. However, he admitted that he expected that minor guests would bring and consume alcohol while on his property. The father had previously hosted similar parties given by his older son. As a result of having given such parties, the father had developed his own "rule". The "rule" imposed by the father was that any guest who chose to drink alcohol would not be permitted to leave the party

-11-

and would be required to spend the night. The guests were advised of this "rule" prior to the party.

In **Biscan**, the plaintiff decided she wanted to leave the party. She asked a friend, Hughes Brown, who was also a guest at the party, for a ride. The plaintiff and Mr. Brown then left the party. When they departed, Mr. Brown was driving his vehicle and the plaintiff was a guest passenger. Approximately one mile from the site of the party, Mr. Brown and Ms. Biscan were involved in a one car accident, which resulted in serious injury to Ms. Biscan. Although similar, the facts of the case at bar can be distinguished from those of **Biscan**. First, in **Biscan**, there was a pre-planned party where invitations were extended in advance. Second, in **Biscan**, the father had instructed his daughter to inform the guests of his "rule" that if anyone consumed alcohol that person would not be permitted to leave the party and would have to spend the night on the property. Ms. Biscan arrived at the party intending to stay the night. In short, the father in **Biscan** intended to exercise control over his guests by imposing his "rule". In the case at bar, however, neither Christopher Phelon nor Megan Woods intended to spend the night at the Roberson home. In fact, both Christopher and Megan had been instructed to return home by their respective parents. Although Rebecca Roberson testified that she imposed an 11:00 curfew on those minors who stayed overnight at her home, this "rule" did not apply to Christopher or Megan by virtue of the fact that they were both uninvited and unexpected guests. Furthermore, in **Biscan**, the driver of the vehicle in which Ms. Biscan was a passenger was intoxicated; his blood alcohol level was .17. As discussed above, in this case, there is no proof that Christopher Phelon, who was driving at the time he and Megan left the Roberson home, was intoxicated.

Tennessee Courts have consistently held that for a duty to arise because of a special relation the defendant must have the ability, capacity, means or authority to control the other person. *See, e.g., Lett v. Collier Foods, Inc.*, 60 S.W.3d 95 (Tenn. Ct. App. 2001); *Marr v. Montgomery Elevator Co.*, 922 S.W.2d 526 (Tenn. Ct. App. 1996). In **Biscan**, the Court found that the father intended to exercise precisely that control which would have prevented Mr. Brown from leaving the party in an intoxicated state. The father asserted his control by imposing a "rule" and then failed to follow through. Here, Rebecca Roberson did not attempt to exercise control over Christopher Phelon because she had no reason to know, or to believe, that he was incapable of operating his vehicle.

The **Biscan** Court used a balancing test, "balancing the degree of foreseeability of harm against the burden upon the defendant to avoid the harm by acting different." The gravamen of the Court's balancing test is the degree of foreseeability since a duty of care is dependent upon foreseeability. As discussed above, it was not foreseeable that, after leaving the Roberson house for a short trip to a Union City drive-through restaurant, that the sober driver Christopher Phelon would relinquish control of his own vehicle to an intoxicated Megan Woods.

For the foregoing reasons, we affirm the Final Order of the trial court. Costs of this appeal are assessed to the Appellants, Betty Puckett and Terry Phelon, and their surety.

_____

W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.