IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2008 Session

## EDWINA MONTGOMERY EX REL. THOMAS M. MONTGOMERY v. KALI OREXI, LLC ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 2006-0690-III      Rex Henry Ogle, Judge**

**No. E2008-01207-COA-R3-CV - FILED MARCH 27, 2009**

In this wrongful death action, Edwina Montgomery ("the Plaintiff"), individually and as the surviving spouse of Thomas M. Montgomery ("the Deceased"), brought suit under the Tennessee Dram Shop Act ("the Dram Shop Act" or "the Act"), Tenn. Code Ann. §§ 57-10-101 and 102 (2002). The Plaintiff also sued for negligence and negligence *per se*.[1] The Plaintiff sued Kali Orexi, LLC, which operates under the trade name of Gondolier Italian Restaurant and Pizza ("Gondolier"). Gondolier moved for summary judgment, which was granted as to all theories of recovery. We affirm the summary judgment on what appears to be an issue of first impression. We hold that Tenn. Code Ann. §§ 57-10-101 and 102 (2002) apply to third parties and do not authorize an action against a seller of an "alcoholic beverage or beer" by or on behalf of the supplied, or "first" party. Since the Dram Shop Act does not address first parties, its enactment leaves the law as to first parties as it existed before the Act's enactment. In addition, under the circumstances of this case, the trial court correctly held that the injuries to the Deceased were not foreseeable; thus, Gondolier owed the Deceased no duty. Furthermore, even if a duty were owed, it was not breached. The question whether the actions of the Deceased and a taxi driver, who was paid by Gondolier to take the intoxicated Deceased home, were intervening and superseding causes that relieve Gondolier of liability are not addressed since we hold that the Plaintiff had no cause of action under the Dram Shop Act or for common law negligence. Accordingly, we affirm.[2]

### Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

---

[1] The Plaintiff made no argument in the trial court concerning negligence *per se;* nor did she address the cause of action in her brief to this court; any issue concerning the allegation of negligence *per se* has been waived.

[2] The trial court certified the summary judgment in favor of Gondolier as a final judgment under Tenn. R. Civ. P. 54.02. The Plaintiff's actions against the taxi cab company and its driver are presumably still pending in the trial court.

Bryan E. Delius and Richard L. Burnette, Sevierville, Tennessee, for the appellant, Edwina Montgomery.

Dana C. Holloway and Joshua A. Wolfe, Knoxville, Tennessee, for the appellee, Kali Orexi, LLC.


**OPINION**

I.

Viewing the evidence, and all reasonable inferences to be drawn from it, in the light most favorable to the nonmoving party, *i.e.*, the Plaintiff, we state the facts that are pertinent to this appeal by quoting the Plaintiff, as follows:

> On June 24, 2006, [the Deceased] was a customer at [Gondolier] in Gatlinburg, Tennessee. While at [Gondolier], [the Deceased] was served alcoholic beverages and became extremely intoxicated.
>
> Gondolier staff later summoned Ken Kirkland, a local taxi cab driver, to take the Deceased home from the restaurant.
>
> Upon first contact with [the Deceased], Mr. Kirkland observed that [the Deceased] was intoxicated. Mr. Kirkland testified that [the Deceased] exhibited physical symptoms of intoxication, such as "slurred speech, unable to stand, very wobbly when he moved." Mr. Kirkland described [the Deceased] as being "extremely intoxicated."
>
>            \*    \*    \*
>
> Shortly after departing from Gondolier, [the Deceased] informed Mr. Kirkland that he did not want to go home, and that he wanted Mr. Kirkland to take him back to the Gondolier. As Mr. Kirkland continued to drive towards the area [where the Deceased] resided, [the Deceased] grabbed the steering wheel of the cab, causing the cab to veer into the other lane of the roadway. Mr. Kirkland testified that in response he "slapped his hand away" and "hit the brakes and moved over to the side of the road."
>
> After a brief discussion [in which Mr. Kirkland warned the Deceased not to grab the steering wheel again], Mr. Kirkland resumed driving towards the area in which [the Deceased] resided. Shortly thereafter, [the Deceased] again stated that he did not want to go to his house, and wanted to return to the Gondolier. At which time, [the Deceased]

2

grabbed at the cab's steering wheel a second time. Mr. Kirkland testified that at that time he pushed [the Deceased] back towards the passenger seat and pulled the cab over onto the side of the road and turned off the vehicle's engine.

Mr. Kirkland exited the cab and went to the passenger side to remove [the Deceased] from the vehicle.

* * *

As he was driving away, Mr. Kirkland placed a telephone call to 911, and informed the operator that he had put a "very drunk" man out of his cab and left him on the side of the road. The Sevier County Sheriff's Department responded to the 911 call, but was unable to locate [the Deceased] at the location described by Mr. Kirkland.

On June 26, 2006, [the Deceased's] body was located by the Sevier County Sheriff's Department in a river underneath a bridge on Highway 321 in Sevier County. . . .

Autopsy test results revealed that [the Deceased] was heavily intoxicated at the time of his death. [The Deceased's] blood alcohol content was measured at .37%. The attending pathologist listed the cause of death as blunt force trauma injuries sustained by [the Deceased] when he fell from a bridge.

II.

The issues presented are as follows:

Whether a cause of action under Tenn. Code Ann. § 57-10-102 against a seller of an "alcoholic beverage or beer" is available to the Deceased or his representative, who is not a third party, but was himself the consumer of the alcohol.

Whether the enactment of Tenn. Code Ann. §§ 57-10-101 and 102 changed the common law with respect to liability of furnishers of alcohol or beer to an intoxicated person who injures himself.

Whether the Trial Court was correct in holding as a matter of law that the Deceased's injuries were so unforeseeable that no legal duty arose on the part of Gondolier.

Whether the Trial Court was correct in holding as a matter of law that if Gondolier had a duty, it fulfilled it.

3

Whether the Trial Court was correct in holding as a matter of law that the actions of the Deceased and Mr. Kirkland constitute intervening superseding acts that relieved Gondolier of liability.

## III.

Our review of the matters on this appeal is *de novo*. Tenn. R. App. P. 13(d). *See **Blair v. West Town Mall***, 130 S.W.3d 761, 763 (Tenn. 2004). Our inquiry under Tenn. Code Ann. §§ 57-10-101 and 102 involves a construction of those statutes. "'[C]onstruction of [a] statute and application of law to the facts [are questions] of law.'" ***Worley v. Weigels, Inc.***, 919 S.W.2d 589, 592 (Tenn. 1996) (quoting ***Beare Co. v. Tennessee Dept. of Rev***., 858 S.W.2d 906, 907 (Tenn. 1993)). Thus, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. ***Id.*** (citations omitted). Rule 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04; *see **Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 88 (Tenn. 2000).

## IV.

## A.

The first issue we address is whether a person who purchases an "alcoholic beverage or beer" and is injured or dies as a result of the consumption may sue the supplier of the alcohol *under the Dram Shop Act*. This inquiry calls upon us to interpret the language of Tenn. Code Ann. §§ 57-10-101 and 102, which comprise the entirety of the Dram Shop Act.

The Plaintiff contends that Tenn. Code Ann. § 57-10-102 ("section 102") permits what she calls "first party causes of action." She says that under section 102 "any party" who has suffered personal injury or death may bring a cause of action against a commercial seller of an "alcoholic beverage or beer" in circumstances in which the alcoholic beverage or beer was sold to an obviously intoxicated person or a minor.

Gondolier contends that Tenn. Code Ann. § 57-10-101 ("section 101") states a general rule, *i.e.*, that it is the consumption of the beverage and not the furnishing of it that is the proximate cause of injuries *to third parties* by intoxicated persons, and that section 102 states two narrow exceptions to the general rule of non-liability *to third parties* set out in section 101. These exceptions address circumstances in which a purveyor of the beverage sells it to 1) a person known to be a minor or 2) an "obviously intoxicated" person. According to Gondolier, on the other hand, section 102 applies only in circumstances in which a third party is injured by the intoxicated person.

Section 101 provides:

> The general assembly hereby finds and declares that the consumption of any alcoholic beverage or beer rather than the furnishing of any

4

alcoholic beverage or beer is the proximate cause of *injuries inflicted upon another* by an intoxicated person.

Tenn. Code Ann. § 57-10-101 (2002). (Emphasis added.) Section 102 states:

> Notwithstanding the provisions of § 57-10-101, no judge or jury may pronounce a judgment awarding damages to or on behalf of any party who has suffered personal injury or death against any person who has sold any alcoholic beverage or beer, unless such jury of twelve (12) persons has first ascertained beyond a reasonable doubt that the sale by such person of the alcoholic beverage or beer was the proximate cause of the personal injury or death sustained and that such person:
>
> (1) Sold the alcoholic beverage or beer to a person known to be under the age of twenty-one (21) years and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold; or
>
> (2) Sold the alcoholic beverage or beer to an obviously intoxicated person and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold.

Tenn. Code Ann. § 57-10-101.

Interpreting sections 101 and 102, the Supreme Court has stated:

> When the words of a statute are plain and unambiguous, the assumption is "that the legislature intended what it wrote and meant what it said." The pertinent language must be [applied] "without any forced or subtle construction extending its import."

*Worley*, 919 S.W.2d at 593 (quoting *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295, 296 (Tenn. 1992) (citations omitted)).

The *Worley* Court went on to note:

> These statutes are models of clarity. Construction or interpretation of their plain language would be an exercise in obfuscation.

*Id*. Section 101 states a general rule, and section 102 states two narrow exceptions to the general rule. In *Biscan v. Brown*, a 2005 case interpreting sections 101 and 102, the Supreme Court noted that the specific exceptions in section 102 "must be confined to their terms and cannot be read to somehow limit the broad rule stated in section 101." *Biscan v. Brown*, 160 S.W.3d 462, 473 (Tenn. 2005). Quoting *Burns v. City of Nashville*, the Supreme Court added, " 'Where a general rule has

5

been established by statute, with exceptions, the court will not curtail the former, not add to the latter by implication.' " **Id.** (quoting **Burns v. City of Nashville**, 132 Tenn. 429, 435, 178 S.W.1053, 1054 (1915)).

The general rule stated at section 101 applies in circumstances in which a third party is injured. The statute is silent about a circumstance in which an intoxicated person (*i.e*., a first party) is injured. The Plaintiff asks this court, however, to interpret the generic language, "any person," in section 102 to bring intoxicated persons within the coverage of the statute.

We decline to read section 102 in isolation from section 101. Rather, we look to the statutory scheme as a whole. **Faust v. Metro. Gov't of Nashville**, 206 S.W.3d 475, 490 (Tenn. Ct. App. 2006). As this Court has said:

> The rule relative to "*pari materia*" construction applies . . . with equal force to separate provisions within a single statute. The different parts of a statute reflect light upon each other, and statutory provisions are regarded as *in pari materia* where they are parts of the same act. Hence, a statute should be construed in its entirety, and as a whole. All parts of the act should be considered and construed together. It is not permissible to rest a construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto. The legislative intention, as collected from an examination of the whole as well as the separate parts of a statute, is not to be defeated by the use of particular terms.

**Id**. (citations omitted). In this case, reading section 101 and 102 *in pari materia*, it is clear to us that the isolated phrase "any person" in section 102 should not be read so as to defeat the legislative intent that is stated as the general rule in section 101. We decline to construe section 102 in such a way as to add to the overall ambit of the Dram Shop Act.

The Supreme Court has previously reviewed the history of sections 101 and 102 and concluded that the statute was "intended to codify the common-law rule that an individual who furnishes alcohol to another is not liable for any damages resulting from the other's intoxication, even if those damages are foreseeable." **Biscan**, 160 S.W.3d at 473 (citing **Cecil v. Hardin**, 575 S.W.2d 268, 271 (Tenn. 1978)).

While recognizing the Supreme Court's pronouncement in **Biscan** and other cases, the Plaintiff, nevertheless, argues that some states allow first-party actions, and points out cases in Texas and Florida. The Florida statute does not include the third-party language ("injuries inflicted upon another by an intoxicated person") of section 101, however. *See* Fla. Stat. § 768.125 (2003) (liability "for injury or damage caused by or resulting from the intoxication of such minor or person"). The same is true of the Texas statute. *See* Tex. Alco. Bev. Code Ann. § 2.02(b)(1) (1993) (refers to person receiving alcohol who "was obviously intoxicated to the extent that he presented a clear

danger to *himself* and others") (emphasis added). The Florida and Texas cases, based on statutes with wording different from our own, are of no help to the Plaintiff.

Our job in interpreting statutory provisions is to determine and give effect to the legislature's intent. *Kyle v. Williams*, 98 S.W.3d 661, 664 (Tenn. 2003). By its clear language section 101 provides that the consumption of an alcoholic beverage or beer, and not the furnishing of it, "is the proximate cause of injuries inflicted *upon another* by an intoxicated person." (Emphasis added.) The two exceptions to the general rule of non-liability of furnishers of alcohol must be read narrowly and within the parameters set forth in section 101.

Since the general rule stated in section 101 deals with circumstances in which a *third party* is injured by an intoxicated person, the exceptions to the general rule likewise were intended to apply in circumstances in which a *third party* is injured by an intoxicated person – either when a sale was knowingly made to a minor who injures another or when a sale is made to "an obviously intoxicated person" who injures another. On this issue of first impression we hold that Tenn. Code Ann. §§ 57-10-101 and 102 apply only to third parties and do not permit an action against a seller of an "alcoholic beverage or beer" by or on behalf of the supplied party, *i.e.*, a first party. We thus affirm the trial court's grant of summary judgment as to the Plaintiff's suit predicated upon an alleged violation of the Dram Shop Act.

B.

We now turn our attention to the Plaintiff's suit for damages based upon the common law.

The General Assembly has plenary power within constitutional limits to change the common law by statute. *See Southern Ry. Co. v. Sanders*, 193 Tenn. 409, 415, 246 S.W.2d 65, 67 (1952). The "[r]ules of the common law are not repealed by implication, and if a statutes does not include and cover such a case, it leaves the law as it was before its enactment." *Monk v. Ramsey*, 223 Tenn. 247, 252, 443 S.W.2d 653, 655 (1969) (citation omitted).

The Plaintiff argues that the common law foreseeability inquiry set forth in *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn. 1981), has been superseded by the Dram Shop Act. In *Brookins*, the Supreme Court stated, "[W]hether the sale of intoxicants is the proximate cause of subsequent injuries is essentially a question of foreseeability . . . ." 624 S.W.2d at 549 (adopting *Mitchell v. Ketner*, 54 Tenn. App. 656, 666, 393 S.W.2d 755, 759 (1964)). In *Worley*, the High Court explicitly stated: "Title 57, Chapter 10, of the Tennessee Code entitled 'Alcohol-Related Injuries' [Tenn. Code Ann. §§ 57-10-101 and 102 (2002)] *replaced* the rule stated in *Brookins*." *Worley*, 919 S.W.2d at 592. The portion of the holding in *Brookins* that was replaced was the rule as to proximate cause in third-party actions. Section 101 provides that it is the consumption of the beverage, not the furnishing of it, that is the proximate cause of any injury to a third party, thus rejecting the notion that proximate cause is an inquiry of foreseeability under the Act.

In this opinion, we have held that the Dram Shop Act does not apply to first parties, such as the Plaintiff's decedent in this case. Since the statute does not cover first party actions against furnishers of an alcoholic beverage or beer, it leaves the law concerning first-party actions as it

7

existed before the Act's enactment. As we have previously noted, the common law is not repealed by implication. Our holding regarding the common law is further bolstered by appellate decisions since the enactment of the Dram Shop Act. For example, in *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn. 1994), which was a post-Dram Shop Act decision of the Supreme Court, the Court analyzed a case in which a minor sued a restaurant that had served her alcohol shortly before she drove and was injured in a one car accident. *Id.* at 936. There was no mention of, citation to, or discussion of the Dram Shop Act.

We conclude and hold that the enactment of the Dram Shop Act did not affect the common law rules applicable to first-party actions against a furnisher of an alcoholic beverage or beer.

C.

We hold that the trial court correctly applied common law principles to the Plaintiff's cause of action for negligence. That court noted as follows: "The Court also finds that the [Deceased's] injuries were not reasonably foreseeable and, as such, no duty arose on the part of Gondolier to protect against them." To establish a negligence claim at trial a plaintiff must show the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal causation. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998) (citations omitted); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted).

At early common law there was no cause of action for first-party claims. For example in a 1940 case, the Supreme Court said:

> It was not a tort at common law to either sell or give intoxicating liquor to a strong and able-bodied man, and it can be said safely that it is not anywhere laid down in the books that such act was even held at common law to be culpable negligence that would impose legal liability for damages upon the vendor or donor of such liquor.

*Tarwater v. Atlantic Co.*, 176 Tenn. 510, 144 S.W.2d 746 (1940) (quoting *Cruse v. Aden*, 127 Ill. 231, 233, 20 N.E. 73, 74 (1889)). Refusal to impose liability on the furnisher of an alcoholic beverage or beer was found on two bases. One was that the person who voluntarily became intoxicated was the proximate cause of the injury. *Id.* at 176 Tenn. at 513, 144 S.W.2d at 748. The second basis was that the intoxicated person's acceptance of the alcohol was an independent intervening cause that cut off liability. *Tarwater*, 176 Tenn. at 511-12, 144 S.W.2d at 747.

This bright-line approach began to change with the decision in *Mitchell v. Ketner*, 54 Tenn. App. 656, 393 S.W.2d 755 (Tenn. Ct. App. 1964). In *Mitchell*, this court stated that it was "unwilling to hold that, no matter what the circumstances, the act of the purchaser and not the sale constitute the proximate cause of injury to third persons or that consumption of the intoxicant is always an independent, intervening act which breaks the chain of causation." 54 Tenn. App. at 665, 393 S.W.2d at 759 (citation omitted). Some years later, in *Brookins*, the Supreme Court adopted

the analysis of *Mitchell*, quoting that decision and concluding that whether the sale of intoxicants is the proximate cause of subsequent injuries is essentially a question of foreseeability. *Brookins*, 624 S.W.2d at 549. In 1986, the legislature expressed its concern that the courts had moved away from the traditional common law approach; as a consequence, it passed the Dram Shop Act.

Our review of the case law leads us to conclude that no Tennessee case has altered the common law rule in relation to first-party claims by adults[3] who are injured while intoxicated and seek to recover damages directly from the furnisher of the beverage. Indeed, in the same year the Dram Shop Act was passed, this court considered a case in which a "grossly intoxicated" 27-year-old plaintiff was injured in a single-car accident after drinking at the defendant's bar. *Jordan v. The Krystal Co.*, 1986 WL 11218, at *1 (Tenn. Ct. App. W.S., filed October 7, 1986). This court affirmed the trial court's dismissal of the case for failure to state a claim for which relief can be granted, noting that "one cannot recover damages when he actively contributes to his own intoxication, which is the proximate cause of his injury." *Id.* at *3.[4]

We recognize that if a person drives while intoxicated there is a foreseeable risk that accidents, injuries and deaths may result. *See West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 552 (Tenn. 2005) (common knowledge that drunk driving directly results in accidents, injuries, and deaths). In this case, however, the Deceased did not drive. Rather, a Gondolier staff person called a taxi, assisted the Deceased into the taxi and paid for the Deceased's trip home. She also moved the Deceased's car, which was not parked on Gondolier's premises, so that it would not be towed. These facts are undisputed.

The Plaintiff refers this court to *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991). The Plaintiff quotes McClenahan, as stating that "[t]he foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place . . . ." *Id*. at 775. The Plaintiff omits an important qualification to the rule stated, however. The complete sentence reads, "The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred." *Id.*

Questions regarding foreseeability are ordinarily questions of fact for a jury. However, even this question may be decided at the summary judgment stage if the evidence is uncontroverted and if the facts and the inferences reasonably drawn from them permit reasonable persons to reach only one conclusion. *See McCall*, 913 S.W.2d at 153; *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995); *Staples*, 15 S.W.3d at 89. This is such a case.

Based on the facts, and considering the inferences to be drawn from the facts favorable to the Plaintiff, we hold that a reasonable person can reach only one conclusion and it is that Gondolier

---

[3] The courts treat minors differently. *See Jordan*, 1986 WL 11218, at *3.

[4] *Jordan* was decided pre-*McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

9

could not have foreseen the general manner in which the Deceased's injuries occurred; nor through the exercise of reasonable care should Gondolier have foreseen that once the Deceased was safely in a taxi to be driven home, he would grab the steering wheel of the taxi turning it into the oncoming lane, be warned, repeat the same conduct, and be put out of the taxi onto the roadside by the taxi driver, following which he would fall off a bridge to his death.

We affirm the trial court's holding that the Deceased's injuries were not reasonably foreseeable and, as such, no duty arose on the part of Gondolier to protect against them. ***Giggers v. Memphis Housing Auth***., __ S.W.3d __, 2009 WL 249742, at *6 (Tenn. 2009); ***Satterfield v. Breeding Insulation Co.***, 266 S.W.3d 347, 366 (Tenn. 2008). Given the undisputed facts, Gondolier negated an element of the Plaintiff's *prima facie* case for negligence, *i.e.*, that the defendant owed a duty to the Deceased. Summary judgment was thus properly granted on the basis that Gondolier did not owe the Deceased a duty.

D.

When a risk of injury is not generally foreseeable, no duty arises. If no duty arises, there can be no breach of duty. The trial court held that even if there had been a duty, however, Gondolier fulfilled that duty as a matter of law. We agree.

The Plaintiff analyzes the issue of breach of duty with reference to the Dram Shop Act. The Plaintiff asserts that Gondolier had a duty not to serve alcohol to an obviously intoxicated person, but the only law the Plaintiff cites is section 102 of the Dram Shop Act.[5] Since we have held that sections 101 and 102 are not applicable to a first-party action such as the one the Plaintiff has brought, this analysis is inapposite. Going beyond the Act, we hold that the Plaintiff's position is at odds with the common law.

"At common law, an individual who sold or furnished alcohol to another generally was held not to be liable for damages resulting from the other's intoxication, even if those damages were foreseeable . . . ." ***Brookins***, 624 S.W.2d at 549 (citations omitted). For example, the Supreme Court has specifically declined to impose a duty on a commercial business to physically control an intoxicated driver by preventing him or her from leaving the premises. ***East Tenn. Pioneer Oil Co.***, 172 S.W.3d at 522 ("[W]e do not hold that convenience store employees have a duty to physically restrain or otherwise prevent intoxicated persons from driving."); ***Biscan***, 160 S.W.3d at 482 ("Reasonable care [of adult social host] under the circumstances may not have included physically restraining his guests").

In ***Collins***, this court noted that the reasoning of ***Biscan*** "is consistent with the general principle that a defendant's duty to control the conduct of another depends in part on the defendant having the means and ability to control the third party." ***Collins v. Arnold***, No. M2004-02513-COA-

---

[5] The penalty for serving an "obviously intoxicated" person is set forth at Tenn. Code Ann. § 57-4-203(c) (Supp. 2008). A violation is a Class A misdemeanor. In addition, a vendor's permit or license can be suspended or revoked. *See* Tenn. Code Ann. § 57-5-108(c) (Supp. 2008).

10

R3-CV, 2007 WL 4146025, at *11 (Tenn. Ct. App. M.S., filed November 20, 2007) (citing ***Biscan***, 160 S.W.3d at 481; ***Puckett v. Roberson***, 183 S.W.3d 643,652 (Tenn. Ct. App. 2005)).  In this case Gondolier controlled the Deceased's conduct to the extent of seeing that he did not pose a danger by driving while intoxicated.  But just as in the cases where the courts have found no duty to control an intoxicated person who chooses to drive, so Gondolier had no means and no ability to control the Deceased once he left the restaurant in a taxi.

The Plaintiff argues that the seller is not relieved of its duty to an intoxicated patron by calling a taxi or otherwise removing the individual from the premises.  However, "[t]he general duty of care does not include an affirmative duty to act for the protection of another . . . ." ***Biscan***, 160 S.W.2d at 478.  In the circumstances of this case, if Gondolier can be said to have any duty to the Deceased, which we assert it did not, it did not breach it as a matter of law.  The facts and the inferences from the facts in this case are such that a reasonable person can reach only one conclusion: by calling a cab, seeing the Deceased safely into it as a passenger and paying the Deceased's fare, Gondolier fulfilled any duty it might have.  Gondolier negated a second necessary element (breach of duty) of the Plaintiff's common law claim of negligence.  Summary judgment was thus appropriate.

11

E.

In the Judgment, the trial court also found that "the actions of the [Deceased] and Mr. Kirkland constitute intervening [superseding] acts in this case." We have held that the Plaintiff has no cause of action under Tenn. Code Ann. §§ 57-10-101 and 102 (2002) and that she cannot proceed under a common law theory of negligence. Thus, whether intervening actions by the Deceased and/or Mr. Kirkland were superseding causes that relieved Gondolier of liability need not be decided.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Edwina Montgomery. This case is remanded to the trial court for further proceedings, consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

12