FILED
07/12/2023
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 28, 2023 Session

## JOHN BENBOW v. L&S FAMILY ENTERTAINMENT, LLC, ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 2020-CV-332      Joe Thompson, Judge**

---

### No. M2022-00491-COA-R3-CV

---

This case concerns claims of negligence against several people and entities for allegedly serving alcohol to and/or failing to protect a 20-year-old man who died in a car accident while intoxicated. John D. Benbow ("Plaintiff"), individually and as next of kin to his son, Jacob N. Benbow, deceased, filed a wrongful death action in the Sumner County Circuit Court ("the Trial Court") against the defendants, L&S Family Entertainment, LLC d/b/a Strike & Spare ("L&S"); JPZ, LLC d/b/a Silverado Rivergate Sports Bar & Grill ("Silverado's");[1] Rancho Cantina, LLC ("Rancho Cantina"); Jody D. McCutchen; Brandi McCutchen; and Brenon D. McCutchen ("the McCutchens"). Certain of the defendants filed motions for summary judgment. The Trial Court granted summary judgment for Rancho Cantina, L&S, Brandi, and Jody.[2] However, the Trial Court denied summary judgment for Brenon.[3] Plaintiff appeals. We affirm the Trial Court's grant of summary judgment to Jody because Plaintiff failed to create any genuine issue of material fact that Jody took charge of Jacob. However, we reverse the Trial Court's grants of summary judgment to Rancho Cantina, L&S, and Brandi, as genuine issues of material fact exist with respect to Plaintiff's claims against those parties. We observe that the standard is comparative fault, not contributory negligence. Whether Jacob was at least 50% at fault for comparative fault purposes is a question not properly resolvable at this summary judgment stage under the facts of this case. We thus affirm, in part, and reverse, in part. We remand to the Trial Court for further proceedings consistent with this Opinion.

---

[1] Silverado's has not filed a brief on appeal nor does the record contain any disposition for that entity. In this appeal, we address only those defendants for whom there is a final judgment.

[2] In this Opinion, we sometimes use first names for ease of read because several individuals share a last name. We mean no disrespect in doing so.

[3] Brenon's denial of summary judgment was not a final judgment, so we do not address his case. This Court entered an order dismissing Brenon's portion of the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Kirk L. Clements, Nashville, Tennessee, for the appellant, John D. Benbow, individually and as next of kin to his son, Jacob N. Benbow, deceased.

Richard C. Mangelsdorf, Jr., Nashville, Tennessee, for the appellee, L&S Family Entertainment, LLC d/b/a Strike & Spare.

Steven J. Meisner and Angelica M. Santiago, Nashville, Tennessee, for the appellee, Rancho Cantina, LLC.

Taylor D. Payne, Murfreesboro, Tennessee, for the appellees, Jody D. McCutchen, Brandi McCutchen, and Brenon D. McCutchen.

## OPINION

## Background

On February 27 and 28, 2020, the decedent, Jacob N. Benbow, was 20 years old, and Brenon D. McCutchen was 21 years old. Jacob and Brenon were close friends and went to Rancho Cantina for dinner on the evening of February 27, 2020. While at Rancho Cantina, Brenon ordered a pitcher of beer. The server checked Brenon's identification and brought the pitcher of beer to him. According to Brenon, the server brought two empty glasses, placing one in front of him and one in front of Jacob. Brenon testified in his deposition that Jacob poured himself a glass of beer from the pitcher, that he did not give him express permission to drink from the pitcher, and that he did not stop him from pouring a drink. According to Brenon, he and Jacob each drank half the pitcher of beer while at Rancho Cantina. There is an allegation that a pitcher of margaritas was also ordered and consumed, but Rancho Cantina denied that fact. The receipt reflected the sale of a pitcher of margaritas in addition to the pitcher of beer. However, Brenon had no recollection of ordering margaritas, and the server denied that margaritas were ordered or served to the table. Jacob paid the bill, and they left Rancho Cantina.

After leaving dinner at Rancho Cantina, Brenon and Jacob drove to L&S, doing business as Strike & Spare bowling alley. A friend of Brenon and Jacob stated that he saw them in the parking lot of Strike & Spare on their way in and that they appeared intoxicated. However, Brenon did not recall seeing this friend. While still in the parking lot of the bowling alley, Jacob gave Brenon $20. According to the friend, Jacob asked Brenon to buy a pitcher of beer at Strike & Spare. Brenon and Jacob walked around inside and then went to the bar at Strike & Spare where Brenon purchased a pitcher of beer. The bartender checked Brenon's identification, and served him the pitcher of beer and two cups. Jacob was standing next to Brenon at the bar, but his identification was not checked. Brenon and Jacob drank the pitcher of beer in the bar area. According to Brenon, each drank half of the pitcher.

After leaving Strike & Spare, Jacob and Brenon went to McDonalds and then to Silverado's to meet Brenon's girlfriend. When Brenon and Jacob arrived at Silverado's, Brenon's girlfriend was concerned that they appeared intoxicated and sent a text message to Brenon's mother, Brandi McCutchen, stating that Brenon and Jacob were drunk and that she was worried about them driving. Brandi McCutchen received the text messages while at home with Jody McCutchen, Brenon's father. Brandi told him that she was going to go pick up Brenon and Jacob from Silverado's. Brandi arrived at Silverado's between 10:45 and 11:00 P.M., and Jacob was heavily intoxicated. Brenon, Brandi, and Brenon's girlfriend were all drinking. Brandi did not witness Jacob buying a drink at Silverado's. At Silverado's, those under 21 years of age are given an "X" on their hand. Jacob had an "X" on his hand. However, Jacob's debit card was used at Silverado's to buy alcohol. Plaintiff alleges, based on the deposition testimony of Lance Lester, the manager at Silverado's, that Brandi and Brenon's girlfriend purchased drinks for Jacob with his debit card and that Brenon took the drinks to Jacob in the bathroom; however, the McCutchens denied this. While at Silverado's, Jacob passed out on the dance floor and threw up on the patio.

Brenon and Jacob had been driving Jacob's vehicle. After leaving Silverado's, Jacob was intoxicated and unable to drive. Brenon and Brandi helped Jacob to his car and put his seatbelt on him. Brenon drove Jacob's vehicle. They planned for Brenon to drive Jacob and his vehicle to Jacob's home and have Brandi pick Brenon up at Jacob's house. However, the plan changed, and Brenon and Jacob went to Brenon's home. Brandi stopped at a fast food restaurant on her way home. During the drive home, Brenon and Jacob were stopped by a Hendersonville police officer, who observed Jacob intoxicated. They were nevertheless allowed to proceed home. When arriving at Brenon's home, Jacob laid down on Brenon's bed. At some point after returning home, Brenon gave Jacob's keys back to him. Brenon and his father, Jody McCutchen, got into an argument and he told Brenon that if he did not like it, to get out of his home. Thereafter, Brenon told Jacob they had to leave. When backing out in his own car, Brenon hit another car in the driveway. Jacob

was not in the car with Brenon at that time. Jacob sent text messages to his girlfriend and a friend, but he received no response.

Jacob got in his vehicle and attempted to drive home. Within a short distance, Jacob's vehicle left the road and crashed into a telephone pole at approximately 2:03 A.M. Jacob sustained fatal injuries from this crash. Jacob was familiar with the road and drove it often. There were no skid marks on the concrete where the vehicle left the road or in the grass where the vehicle travelled. At the time of the vehicle crash, Jacob's blood alcohol content was .074, which is more than four times the legal limit for a driver under the age of 21.[4]

On April 15, 2020, Plaintiff filed a wrongful death action in the Trial Court against, as relevant, L&S, Rancho Cantina, and the McCutchens.[5] In his first amended complaint, Plaintiff included the following causes of action: (1) negligence and/or recklessness; (2) negligence per se; and (3) negligent infliction of emotional distress. Plaintiff further alleged that the defendants' actions were intentional, malicious, fraudulent, and/or reckless such that Plaintiff was entitled to punitive damages. L&S, Rancho Cantina, and the McCutchens each filed answers to Plaintiff's complaint denying that Plaintiff had a valid cause of action against them.

In September 2021, L&S filed a motion for summary judgment. In its supporting memorandum of law, L&S argued that Plaintiff cannot prevail on a statutory dram shop liability action because Jacob caused fatal injuries to himself while operating a motor vehicle. Additionally, L&S argued further that Jacob's fatal injury was not foreseeable based on the Strike & Spare's employee selling a pitcher of beer and two cups to a patron of legal drinking age hours earlier. Plaintiff subsequently filed his response to L&S's motion averring that a dispute of material facts exists to preclude summary judgment regarding "whether an employee of Strike & Spare served a minor and/or a visibly intoxicated individual in violation of the law." Additionally, Plaintiff argues that L&S's reliance on the Dram Shop Act that the consumption of alcohol is the proximate cause of injury is misplaced because the Dram Shop Act is not applicable to first-party claims.

Following a hearing on March 7, 2022, the Trial Court entered an order granting L&S's motion for summary judgment, stating as follows in pertinent part:

---

[4] Tenn. Code Ann. § 55-10-415(a)(2) provides that a person under the age of 21 years old shall not operate a motor vehicle if his or her blood alcohol concentration is .02% or more.

[5] Plaintiff later amended his complaint to include allegations against the City of Hendersonville, but those claims were dismissed. The City of Hendersonville has not participated in this appeal.

In granting [L&S] summary judgment dismissal, the Court determined that no sale of alcohol occurred to the decedent, Jacob N. Benbow, on February 27, 2020. Mr. Benbow did not pay for the pitcher of beer and was not served the pitcher of beer. Instead the beer was served to Brenon McCutchen who was of legal age to drink and purchased alcohol at [L&S's] establishment.

The Plaintiffs therefore failed to prove a prima facie case of negligence against Defendant, L&S Family Entertainment, LLC d/b/a Strike & Spare.

Further, the Court finds that the Tennessee Court of Appeals' decision in the matter of *Montgomery v. Kali Orexi LLC*, 303 S.W.3d 281 (Tenn. App. 2009) is controlling with respect to the undisputed material facts at issue in this litigation.[6]  The Court determined that this is a first party alcohol liability claim and the Tennessee Dram Shop Act does not apply to the facts of this case. As stated in *Montgomery*, "Our review of the case law leads us to conclude that no Tennessee case has altered the common law rule in relation to first party claims by adults who are injured while intoxicated and seek to recover damages directly from the furnisher of the beverage." 303 S.W.3d 289.

The Court determined that the <u>Montgomery</u> case is controlling and the Plaintiff John D. Benbow is unable to prove the elements necessary to bring a first party claim against L&S Family Entertainment LLC as a matter of law.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that L&S Family Entertainment, LLC is dismissed from this action with prejudice upon summary judgment, pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, the Court having determined that [L&S] has negated an essential element of the Plaintiffs' claim for wrongful death liability.

Rancho Cantina also filed a motion for summary judgment in December 2021, alleging that Jacob should be held to an adult standard of care because he was a young

---

[6] This Court in *Montgomery* held that Tenn. Code Ann. §§ 57-10-101 and -102 (2002) apply only to third parties injured by an intoxicated person and "do not permit an action against a seller of an 'alcoholic beverage or beer' by or on behalf of the supplied party, *i.e.*, a first party." *Montgomery ex rel. Montgomery v. Kali Orexi, LLC*, 303 S.W.3d 281, 287 (Tenn. Ct. App. 2009). In *Montgomery*, this Court held that common law claims by first parties remain as they were prior to enactment of the Tennessee Dram Shop Act and concluded that the trial court properly examined the plaintiff's claims under common law principles. *Id*. at 287-88.

adult and driving on a public road while intoxicated; that it owed no duty to Jacob because his injuries were not reasonably foreseeable; that Brenon took Jacob under his control after leaving Silverado's and had a duty to prevent him from sustaining harm; that Plaintiff could not recover damages because Jacob actively contributed to his own intoxication, which was the cause of his injury; that it was not liable under the Dram Shop Act because it was not injury to a third party; that it did not consciously disregard a substantial and unjustifiable risk by serving Brenon a pitcher of beer; that it was not negligent per se because it did not violate any statutes; that Rancho Cantina was not negligent and cannot he liable for negligent infliction of emotional distress; and that Rancho Cantina's act of serving Brenon a pitcher of beer is not an egregious wrong justifying punitive damages.

Plaintiff responded to Rancho Cantina's motion, arguing that the Dram Shop Act does not apply but that Plaintiff may bring a common law cause of action against the defendant. Additionally, Plaintiff argued that a dispute of material fact existed as to each element of negligence by Rancho Cantina. Specifically, Plaintiff argues that Rancho Cantina had a duty not to serve Jacob because he was a minor and/or visibly intoxicated; that Rancho Cantina violated that duty; that serving alcohol to Jacob as a minor in violation of Tenn. Code Ann. § 57-4-203(b)(1) and as a visibly intoxicated person in violation of Tenn. Code Ann. § 57-4-203(c)(1) was negligence per se; that Jacob's injury was foreseeable; and that Rancho Cantina's duty was not excused by Brenon's actions and can still be found liable for its own negligence. Plaintiff argues that material issues of fact exist as to whether Rancho Cantina breached its duty to Jacob by furnishing and selling alcohol to him; whether Rancho Cantina's action was the proximate cause of Jacob's injuries; whether the defendants' collective negligence is greater than any negligence by Jacob; and whether Rancho Cantina acted recklessly.

The Trial Court also heard oral arguments on Rancho Cantina's motion for summary judgment on March 7, 2022, and entered an order granting summary judgment thereafter as follows:

1. The Court finds it is undisputed decedent, Jacob N. Benbow, never ordered any alcohol beverages from Defendant, Rancho Cantin[a], LLC, prior to the auto accident that caused his death. Instead, the alcoholic beverages were ordered by Defendant, Brenon McCutchen and then given to Mr. Benbow. As a result, the Court finds, as a matter of law, that no "sale" occurred and, therefore, [Rancho Cantina] cannot be liable to Plaintiff.

2. Even if there was a "sale" by Defendant, Rancho Cantina, to Jacob Benbow, the Court finds summary judgment is appropriate because Plaintiffs cannot recover for damages when Plaintiff actively contributed to his own intoxication, which was the proximate cause of his death. In this regard, the

-6-

Court relied on the Tennessee case of <u>Montgomery ex rel. Montgomery v. Kali Orexi, LLC</u>, 303 S.W.3d 281 (Tenn. Ct. App. 2009). The Court finds that there were no issues of fact that Plaintiffs' cause of action against Defendant, Rancho Cantina, was based on the allegation that decedent's intoxication was the cause of his injury and ultimate death. There are also no factual disputes in this case that Mr. Benbow had the capacity and maturity to understand his actions in consuming alcohol or getting behind the wheel of his vehicle. As such, the Court finds Plaintiffs' cause of action against Defendant, Rancho Cantina, LLC, should be dismissed as a matter of law.

It is, therefore, ORDERED, ADJUDICATED AND DECREED as follows:

A. Plaintiffs' cause of action against Defendant, Rancho Cantina, LLC, is dismissed as a matter of law pursuant to Rule 56 of the Tennessee Rules of Civil Procedure and the Tennessee common law as stated in <u>Montgomery ex rel. Montgomery v. Kali Orexi, LLC</u>, 303 S.W.3d 281 (Tenn. Ct. App. 2009.)

Jody, Brandi, and Brenon McCutchen filed a motion for summary judgment in October 2021, arguing that no duty existed requiring them to act for the protection of Jacob and that Jacob's injury was unforeseeable. In their motion, the McCutchens argued that Jacob's intoxication was caused only by Jacob's action of consuming alcohol and not any actions by the McCutchens. They stated further that Jacob's act of driving his car was gross negligence and was the proximate cause of the accident. Plaintiff responded to the McCutchen's summary judgment motion, arguing that the Dram Shop Act is not applicable to this first-party action; that a dispute of material facts exists as to each element of negligence by the McCutchens; and that the defendants have failed to establish that Jacob's negligence was greater than the collective negligence of all the defendants. According to Plaintiff's response, the McCutchens had a duty not to furnish alcohol to Jacob as an underage and visibly intoxicated individual and a question of fact exists as to whether Brenon and Brandi illegally furnished alcohol to Jacob. Additionally, Plaintiff alleges that each of the McCutchens assumed a duty to protect Jacob and then breached that duty. Plaintiff further argued that Jacob's injuries were foreseeable. According to Plaintiff, Jacob's actions were not negligent, but even if they were, his negligence was not greater than the collective negligence of all the defendants.

Subsequently, the Trial Court entered an order granting summary judgment in favor of Jody and Brandi McCutchen as follows in relevant part:

> According to the plaintiff, the duty of the defendants Jody D. and Brandi McCutchen ("parent defendants") exists as a result of Restatement (Second) of Torts §324 which provides:
>
> > One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position that when the actor took charge of him.
>
> This rule, adopted by the Tennessee Supreme Court in *Downs ex rel. Downs v. Bush*, 263 S.W.[3d] 812, 822 (2008),[7] creates two potential questions of fact for a jury: (1) whether the decedent, Jacob Benbow, was "helpless"; and (2) whether the parent defendants "took charge of" the decedent.
>
> The court has little trouble in concluding that there is no genuine issue of material fact with respect to the first prong of this analysis. It is not disputed that the decedent was drunk to the point of intoxication, was throwing up, was belligerent and passed out at some point during the evening immediately prior to his death.
>
> The inquiry regarding whether the parent defendants "took charge of" the decedent is similarly clear. The undisputed facts reveal that Defendant Brandi McCutchen made statements via text message regarding "taking charge of" the decedent, but never followed through on those statements. Brandi McCutchen bought a drink for the decedent, did not at any time have the decedent in her vehicle, left the Silverado's bar in a different vehicle, and stopped on her way home to purchase food. Further, she was unaware that her son had changed his plan and decided not to take the decedent to the decedent's home, but rather to the McCutchen's home. It is undisputed that

---

[7] In *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 822-23 (Tenn. 2008), our Supreme Court applied the Restatement (Second) of Torts § 324 and reversed a grant of summary judgment. The Court held that "[i]f a jury finds that Mr. Downs' level of intoxication rendered him 'helpless' and that the defendants 'took charge of' him, then the defendants owed him a duty to exercise reasonable care in aiding or protecting him." *Id*. at 823.

-8-

no affirmative acts were taken by Brandi McCutchen to "take charge of" the decedent.

Plaintiff's argument that defendant Jody McCutchen "took charge of" the decedent is less plausible. There was little, if any, contact between Jody McCutchen and the decedent, much less any affirmative [act] that would be testament to "taking charge of" the decedent.

For these reasons, summary judgment is appropriate with respect to the parent defendants.

Regarding Brenon, the Trial Court denied summary judgment, ruling as follows on the claims against him:

With respect to Brenon D. McCutchen, there is a genuine issue of material fact with respect to whether Brenon D. McCutchen "took charge of" the decedent. Brenon McCutchen drove most of the night while the decedent was drinking, drove the decedent to the McCutchen home, initiated the decision to leave the McCutchen residence and initially planned to drive both himself and the decedent away from the home. This presents a jury issue. *Downs* at 823.

Brenon subsequently filed a motion to alter or amend the Trial Court's judgment, which was denied.

The Trial Court entered an order certifying that the grants of summary judgment in favor of Rancho Cantina, Jody, and Brandi were final judgments pursuant to Tenn. R. Civ. P. 54.02. Although this Court determined the initial summary judgment order was not final, the Trial Court subsequently entered a separate order designating the grant of summary judgment in favor of L&S as a final judgment pursuant to Rule 54.02. The Trial Court also entered an order designating the denial of summary judgment as to Brenon as a final judgment pursuant to Rule 54.02. Plaintiff timely appealed to this Court. After initiation of this appeal, Plaintiff filed a notice pursuant to Tenn. R. App. P. 24 that he was not filing a transcript in this matter.

## Discussion

Plaintiff raises sixteen issues, which we restate and consolidate as follows: 1) whether the Trial Court erred in granting summary judgment in favor of Rancho Cantina; 2) whether the Trial Court erred in granting summary judgment in favor of L&S; 3) whether the Trial Court erred in granting summary judgment in favor of Brandi McCutchen; and 4)

whether the Trial Court erred in granting summary judgment in favor of Jody McCutchen. The McCutchens raise an additional issue on appeal: whether the Trial Court erred in denying Brenon McCutchen's motion for summary judgment.[8]

We begin our analysis by reviewing the relevant law and the applicable standard of review. Regarding the standard of review for cases decided by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in

---

[8] This Court has entered an order dismissing Brenon's portion of the appeal because the certification as a final order of the denial of summary judgment as to Brenon was improper pursuant to Tenn. R. Civ. P. 54.02.

Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

This case concerns allegations of negligence. As our Supreme Court has explained regarding the elements of negligence:

In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

*Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (additional citation omitted)).

In *McIntyre v. Balentine*, 833 S.W.2d 52, 56 (Tenn. 1992), the Tennessee Supreme Court abrogated contributory negligence, an all-or-nothing approach, in favor of comparative fault. Our Supreme Court explained:

> [W]e feel the "49 percent rule" ameliorates the harshness of the common law rule while remaining compatible with a fault-based tort system. We therefore hold that so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff.

*McIntyre*, 833 S.W.2d at 57 (citation omitted).

This Court has further explained comparative fault as follows:

> Comparative fault "is a question of fact within the jury's province, which should not lightly be invaded by the trial court." *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997). Indeed, we have recently commented on "the infrequency of a trial court's determination of comparative fault at the summary judgment stage of the proceedings." *Lundell v. Hubbs*, No. E2019-02168-COA-R3-CV, 2020 WL 6867229, at *15 (Tenn. Ct. App. Nov. 23, 2020) (citing *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct App. 1997)) (noting that comparative fault is typically a jury issue); *Halmon v. Lane Coll.*, No. W2019-01224-COA-R3-CV, 2020 WL 2790455, at *6 (Tenn. Ct. App. Feb. 19, 2013) (same). "The task of comparing and allocating fault may be taken from the jury only when it can be determined beyond question (or alternatively, when reasonable minds cannot differ) that the plaintiff's fault is equal to or greater than the defendant's." *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *6 (Tenn. Ct. App. Jan. 28, 2002).

*Vaughn v. DMC-Memphis, LLC*, No. W2019-00886-COA-R3-CV, 2021 WL 274761, at *14 (Tenn. Ct. App. Jan. 27, 2021), *no appl. perm. appeal filed*.

Having reviewed the pertinent law, the first issue we address is whether the Trial Court erred in granting summary judgment in favor of Rancho Cantina. Plaintiff argues on appeal that the Trial Court erred in granting summary judgment in favor of Rancho Cantina after finding that Rancho Cantina had not sold alcohol to Jacob. In support thereof, Plaintiff relies on the facts that the server had not carded Jacob, only Brenon, but yet had brought two glasses to the table with the pitcher of beer. Also, he argues that although Brenon ordered the pitcher of beer, Jacob paid for the alcohol as part of the bill. According

-12-

to Plaintiff, at a minimum, there is a question of fact as to whether Rancho Cantina violated Tenn. Code Ann. § 57-4-203 by selling alcohol to a person under 21 years old.[9] Rancho Cantina argues that Jacob paying for the entire bill was not considered a sale and that Brenon ordered the alcoholic beverages. According to Rancho Cantina, there is insufficient evidence to prove that it furnished alcohol to Jacob and, even if a sale occurred, Jacob's actions were the sole cause of his injuries under *Montgomery*. Relying on *Montgomery* and *Jordan v. Krystal Co.*, No. 740, 1986 WL 11218 (Tenn. Ct. App. Oct. 7, 1986), *perm. app. denied Jan. 5, 1987*, Rancho Cantina argues that when Jacob drove an automobile, he was held to the same standard of care as an adult.[10]

---

[9] Tenn. Code Ann. § 57-4-203 provides, in pertinent part:

(b) SALES TO MINORS PROHIBITED.
(1)(A) Any licensee or other person who sells, furnishes, disposes of, gives, or causes to be sold, furnished, disposed of, or given, any alcoholic beverage to any person under twenty-one (21) years of age commits a Class A misdemeanor and shall be punished in accordance with § 39-15-404, as well as any other applicable section.

\*\*\*

(c) OTHER PROHIBITED SALES.
(1) It is unlawful for any licensee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs.

Tenn. Code Ann. § 57-4-203 (West April 18, 2018 to April 19, 2021).

[10] In *Montgomery*, this Court stated:

[I]n the same year the Dram Shop Act was passed, this court considered a case in which a "grossly intoxicated" 27-year-old plaintiff was injured in a single-car accident after drinking at the defendant's bar. *Jordan v. The Krystal Co.*, 1986 WL 11218, at \*1 (Tenn. Ct. App. W.S., filed October 7, 1986). This court affirmed the trial court's dismissal of the case for failure to state a claim for which relief can be granted, noting that "one cannot recover damages when he actively contributes to his own intoxication, which is the proximate cause of his injury." *Id*. at \*3.

*Montgomery*, 303 S.W.3d at 289 (footnote omitted). The *Montgomery* court included a footnote observing that *Jordan* was decided before the 1992 *McIntyre* case. *Id*. at n.4. We note that Jacob was 20 years old, not 27, and thus was underage for purposes of drinking alcohol. The *Montgomery* court stated that "courts treat minors differently." 303 S.W.3d at 289, n.3 (citing *Jordan*, 1986 WL 11218, at \*3).

Plaintiff argues further that the Trial Court erred by determining that Jacob was the sole proximate cause of his fatal injuries and, therefore, unable to recover damages. According to Plaintiff, the Trial Court misapplied the precedent in *Montgomery* when it found that Jacob actively contributed to his fatal injuries and therefore Plaintiff was precluded from recovering damages. *Montgomery* quoted *Jordan* for this proposition. Plaintiff states, however, that comparative fault is applicable to this case and not contributory negligence. Although contributory negligence was in effect when *Jordan* was decided by this Court, L&S argues that *Montgomery* was decided years after the adoption of comparative fault and is still good law. Additionally, Plaintiff argues that a material issue of fact exists regarding whether Jacob had the full capacity to act responsibly as a minor; that his capacity as a minor must be considered in the context of his alcohol consumption; and that his efforts to avoid driving intoxicated that night should be taken into account when determining whether his decision to drive was unreasonable. Plaintiff argues that the collective negligence of all of the defendants is the proximate cause of Jacob's injury. Plaintiff argues that a material issue of fact exists as to whether Jacob was negligent, and if so, whether his negligence is less than the defendants' negligence.

Initially, we are unpersuaded by the argument that Jacob's decision to drink and drive is dispositive against Plaintiff's claims. Dram Shop laws do not apply to first parties as in this case. Indeed, this is not a Dram Shop case. However, the Tennessee General Assembly has fixed the legal drinking age in this state to 21. This is a policy determination by the General Assembly. The General Assembly's clear purpose in its policy decision to make age 21 the legal drinking age in Tennessee is to protect those under age 21 from their own poor choices related to alcohol. This Court does not have the ability to modify the General Assembly's policy decision as to the legal drinking age in Tennessee by saying age 20 is "close enough." Jacob was 20 when the events of this case unfolded. While not a minor, he was not old enough to legally drink alcohol. *Montgomery* does not stand for the proposition that one who sells alcohol to an underage or visibly intoxicated person is shielded from liability. Tennessee law does not preclude an underage first party, such as Jacob here through Plaintiff, from recovering against those who furnished him alcohol. We emphasize that Dram Shop laws are not implicated. The defendants' alleged furnishing of alcohol to Jacob as an underage and/or visibly intoxicated person could constitute proximate cause for Jacob's injuries and death. Whether Jacob was 50% or more at fault for comparative fault purposes is a question of fact; Tennessee no longer applies principles of contributory negligence. *Montgomery* cited to *Jordan* without addressing the difference in the standard. The record in this case is replete with competing evidence as to whether Jacob was furnished with alcohol by some defendants or whether certain defendants assumed and then breached a duty of care to him. That a jury might well find Jacob to have been at fault to some degree is not dispositive against Plaintiff's case so long as Jacob's percentage of fault was less than that of the combined fault of the defendants.

-14-

With respect to Rancho Cantina specifically, it had a duty not to sell or furnish alcohol to an underage person such as Jacob. The record contains evidence that a server at Rancho Cantina carded only Brenon but brought a pitcher of beer to the table with two glasses. We agree with Plaintiff that this creates a factual dispute as to whether Rancho Cantina furnished beer to Jacob or not. A server bringing a pitcher of beer and two glasses to a table with two people—one of legal drinking age and one not—at least creates a question of fact that alcohol was furnished to the underage person by providing him with a glass from which to drink from the pitcher of beer ordered by his friend of legal drinking age. A party selling alcohol may not, in a tacit manner, provide the ready means for an underage person to drink alcohol in the fashion described and avoid liability by claiming there was no sale. At oral arguments, counsel for Rancho Cantina suggested that the second glass was for water, even though it was empty. That may be one possible conclusion to be drawn, but not the only one. Rancho Cantina is free to argue that to the jury at trial if there is any proof presented to support it. Whether Rancho Cantina's actions were tantamount to furnishing Jacob with alcohol is for the trier of fact to decide.

Beyond the pitcher of beer, the record shows—in the form of a receipt—that a pitcher of margaritas was ordered and paid for as well. Rancho Cantina points out that both the server and Brenon agree that no margarita pitcher was ordered or served. However, we reiterate that this is the summary judgment stage, not a stage to decide factual disputes. The receipt showing that a pitcher of margaritas was served and paid for creates a dispute for the trier of fact to resolve as to whether a pitcher of margaritas was served or not. We hold that genuine issues of material fact exist as to whether Rancho Cantina furnished beer to Jacob and whether margaritas were furnished as well. We, therefore, reverse the Trial Court's grant of summary judgment to Rancho Cantina, and remand for Plaintiff's case to proceed against Rancho Cantina.

We next address whether the Trial Court erred in granting summary judgment to L&S. Plaintiff argues that the Trial Court erred in granting summary judgment to L&S after determining that L&S had not sold alcohol to Jacob. Plaintiff relies on the facts that Jacob was standing next to Brenon when Brenon ordered the pitcher of beer and that the bartender carded only Brenon, not Jacob, but then provided two cups with the pitcher of beer. Plaintiff argues that there is a material issue of fact as to whether the bartender at L&S furnished Jacob alcohol on the night before the accident and whether Jacob was visibly intoxicated at the time. However, L&S argues that the only individual L&S sold or furnished alcohol to was Brenon and he was 21 years old at the time of the sale. According to L&S, the record reflects that Jacob's "consumption of alcohol, rather than Strike & Spare's provision of two cups to Brenon, was the proximate cause" of Jacob's death. Additionally, L&S argues that it did not owe a duty to Jacob and could not have reasonably foreseen that Jacob would attempt to drive home from the McCutchens' home. L&S argues that even if it owed Jacob a duty, it ended when he left the bowling alley premises. L&S

argues that Tenn. Code Ann. § 57-10-101 of the Dram Shop Act precludes liability because the legislature has made clear that the consumption of alcohol, rather than the furnishing of alcohol, is the proximate cause of injuries inflicted on others by an intoxicated person.

The record contains evidence that Brenon, with Jacob standing nearby, ordered a pitcher of beer at L&S. Brenon was carded; Jacob was not. L&S had a duty not to serve or furnish alcohol to an underage person. Nevertheless, the server brought out a pitcher of beer with two cups. As we explained in the previous issue, this practice of serving a pitcher of beer and two cups to two people—one of legal drinking age, the other not—may provide the basis for a finding by the jury that the practice was tantamount to furnishing alcohol to the underage person. At least, it is a question of fact. Common sense compels this conclusion that it is a question of fact. A juror is not required to check her common sense at the door to the jury room when making findings of fact.[11] In addition, the record contains evidence that a friend of Jacob and Brenon saw them in the parking lot of Strike & Spare on their way in and described them as visibly intoxicated. L&S had a duty not to serve alcohol to a visibly intoxicated person. In his reply brief, Plaintiff asserts that it is "implausible" that Brenon and Jacob sobered up in the short time between their running into their friend and going into Strike & Spare. This, again, is a question for the trier of fact to resolve. Genuine issues of material fact exist as to whether Brenon and Jacob were visibly intoxicated at L&S and whether L&S furnished alcohol to underage Jacob. We reverse the Trial Court's grant of summary judgment to L&S, and remand for Plaintiff's case to proceed against L&S.

We next address whether the Trial Court erred in granting summary judgment in favor of Brandi McCutchen. According to Plaintiff, this was error by the Trial Court because there is at least a question of fact as to whether Brandi assumed a duty of care to Jacob. Plaintiff argues that Brandi assumed a duty to Jacob by coming to pick them up at Silverado's; assisting Jacob to his car for Brenon to drive him home; helping to put Jacob's seat belt on him; and planning to pick up Brenon from Jacob's home after Brenon dropped Jacob off. According to Plaintiff, a question of material fact exists as to whether Brandi breached her duty toward Jacob by allowing him to drive. However, the McCutchens argue in their brief that Plaintiff never pled in his complaint that Brandi assumed a duty to Jacob.[12] Further, they argue that there are no disputed facts to contradict the Trial Court's

---

[11] The Tennessee civil pattern jury instructions provide as follows, as relevant: "In making your decision, you must consider all the evidence in light of reason, experience and common sense." 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 1.03 (2022 ed.). "In deciding which testimony you believe, you should rely on your own common sense and everyday experience." *Id.*

[12] In Plaintiff's first amended complaint, he states as follows under the cause of action of negligence: "[T]he McCutchen Defendants either individually or collectively had a duty to Jacob Benbow to prevent him from driving or otherwise injuring himself as they assumed the duty to care and protect Jacob Benbow while in his inebriated state or otherwise had such duty under the law."

conclusion that Brandi sent text messages regarding statements of "taking charge of" Jacob but that she never followed through. They allege that because no duty ever existed, no duty could be breached.

Plaintiff argues further that Brandi unlawfully furnished alcohol to Jacob while at Silverado's despite his being underage and intoxicated and that Brandi could be found negligent per se regardless of whether she assumed a duty to Jacob. Plaintiff points to the testimony by the manager of Silverado's, where he stated that he observed on the video two females purchasing alcohol at the bar when Jacob's debit card was used and that those females took the drinks and left them on a drink rail. According to the manager, a man then picked up the drinks, and the man and Jacob went to the bathroom. Plaintiff argues that an issue of material fact exists as to whether Brandi furnished alcohol to Jacob when he was underage and visibly intoxicated. However, the McCutchens argue that Plaintiff failed to allege in his complaint that Brandi had illegally "furnished" alcohol to Jacob and that the issue is waived.[13] They argue further that Brandi is insulated from any allegations of furnishing alcohol pursuant to the Dram Shop Act, located at Tenn. Code Ann. § 57-10-101 and -102. The McCutchens also allege that Jacob is more than 50% at fault for his own injuries.

The parties also discuss the case of *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005), in which our Supreme Court considered the duty of an adult who hosted a party for minors at which alcohol was consumed. In *Biscan*, the High Court stated that "[w]e granted this appeal to determine whether an adult who hosts a party for minors and knows in advance that alcohol will be consumed has or may voluntarily assume a duty of care towards the minor guests. We hold that the defendant adult host had such a duty of care even though he did not furnish any alcohol." *Id*. at 466. The *Biscan* Court went on to state:

> We recognize, as did the Court of Appeals, the apparent tension between our holding that Worley owed a duty of care to protect his underage guests from harm and the legislative determination that one who furnishes alcohol cannot, as a matter of law, be a proximate cause of injury to a third person resulting from the consumption of alcohol. The duty of care Worley owed to his guests, however, lies separate and apart from furnishing alcohol. Because he knowingly permitted and facilitated the consumption of alcohol by minors, an illegal act, Worley had a duty to exercise reasonable care to prevent his guests from harming third persons or from befalling harm themselves. Considering the facts in the light most favorable to the plaintiffs,

---

[13] The first amended complaint states under the negligence cause of action: "Defendant Jody McCutchen and Brandi McCutchen had a duty to Jacob Benbow to not facilitate and/or condone Jacob Benbow's possession and consumption of alcohol to excess or otherwise in violation of the law as Jacob was under the age of twenty-one (21)."

we therefore affirm the trial court's denial of Worley's motion for summary judgment on this ground.

*Biscan*, 160 S.W.3d at 482.

With respect to whether Plaintiff sufficiently alleged negligence per se or assumption of duty against Brandi, we note that Rule 8.01 of the Tennessee Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief the pleader seeks." It is a rather low bar, which we conclude Plaintiff sufficiently met. As to whether Brandi took charge of Jacob, Plaintiff cites evidence that Brandi assisted Jacob to his vehicle, helped put his seat belt on, and assisted Brenon in driving Jacob home. These undertakings by Brandi show at least a measure of involvement with Jacob and an attempt to help him such that a reasonable trier of fact could conclude that Brandi took charge of Jacob. It is for the trier of fact to decide. Regarding whether Brandi furnished alcohol to Jacob, the record contains testimony concerning a video showing two women buying alcoholic drinks with Jacob's card and setting them on a rail. A man picked up the drinks and went to the bathroom, where Jacob also went. It is for the trier of fact to decide whether Brandi furnished alcohol to Jacob, even if by a circuitous route. The record thus contains evidence from which a reasonable trier of fact could conclude that Brandi furnished alcohol to Jacob. We hold that genuine issues of material fact exist as to whether Brandi furnished alcohol to Jacob at Silverado's and whether she took charge of him. We reverse the Trial Court's grant of summary judgment to Brandi McCutchen, and remand for Plaintiff's case to proceed against her.

The final issue we address is whether the Trial Court erred in granting summary judgment in favor of Jody McCutchen. Plaintiff argues that the Trial Court erred in granting summary judgment in favor of Jody when his action of making Brenon and, thus, Jacob leave made the situation worse because it "compelled Jacob to drive while intoxicated." Plaintiff argues that Jody assumed a duty to Jacob by acquiescing and intending that Jacob have a safe place to spend the night while intoxicated. According to Plaintiff, an issue of material fact exists as to whether Jody was aware that Jacob was too intoxicated to drive when leaving the McCutchen home; whether he assumed a duty to prevent him from driving; and whether Jody breached that duty by evicting Brenon and Jacob from his home. Additionally, Plaintiff argues that the Trial Court erred by dismissing allegations that Jody had a duty to prevent Jacob from driving because Jody is a law enforcement officer. Plaintiff contends further that Jody's action of "forcing Jacob Benbow to drive when he knew he was too intoxicated to drive could qualify as reckless." The McCutchens argue that Plaintiff never included in his first amended complaint allegations that Jody assumed a duty to Jacob or that Jody's actions made the situation

-18-

worse.  They further argue that Plaintiff has not cited to facts in the record to support that Jody "took charge" of Jacob or that he breached a duty to Jacob.

Upon our careful review of the record, we conclude that Plaintiff has failed to cite any facts showing that Jody took charge of Jacob, irrespective of Jody's occupation. Plaintiff cites to the *Biscan* case as being analogous, but we find it inapposite on this issue. Jody did not host a party where underage people were known to be drinking alcohol, nor did he do anything comparable.  What is more, the record does not support Plaintiff's contention that Jody compelled Jacob to drive while intoxicated.  That Jody and his son had an argument and Jody told his son he could leave if he did not like it does not mean that Jody assumed a duty of care to Jacob.  Plaintiff has failed to cite any evidence at the summary judgment stage which creates a genuine issue of material fact for trial with respect to Jody.  Under the *Rye* standard and in view of Jody's properly-supported motion for summary judgment, Jody is entitled to judgment as a matter of law.  We, therefore, affirm the Trial Court's grant of summary judgment to Jody McCutchen.

## Conclusion

We affirm the Trial Court's grant of summary judgment in favor of Jody McCutchen.  However, we reverse the Trial Court's grants of summary judgment in favor of Rancho Cantina, LLC; L&S Family Entertainment, LLC d/b/a Strike & Spare; and Brandi McCutchen.  The judgment of the Trial Court is thus affirmed, in part, and reversed, in part.  This cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion.  The costs on appeal are assessed against the Appellees Rancho Cantina, LLC; L&S Family Entertainment, LLC d/b/a Strike & Spare; and Brandi McCutchen.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-19-